IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02275-STV

FRAC SHACK INC.,

    Plaintiff,

v.

FUEL AUTOMATION STATION, LLC, and
ATLAS OIL COMPANY,

    Defendants.

___

**ORDER**
___

Magistrate Judge Scott T. Varholak

This matter is before the Court on Plaintiff's Partial Motion for Summary Judgment of Infringement (the "Motion") [#118]. The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##20, 34] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion. For the following reasons, the Court **DENIES** the Motion.

**I.    BACKGROUND**

According to the Amended Complaint,[1] Frac Shack, Inc. ("Frac Shack") "provides modular solutions for fuel delivery that reduce significantly the health, safety and

---

[1] The Court draws factual allegations from Plaintiff's separate statements of facts, to which Defendant has responded. [##125-1, 127-1] The Court also cites to the Amended Complaint to provide additional context for the instant Motion.

environmental risks associated with fueling operations during hydraulic fracturing." [#30 at ¶ 10] Frac Shack is the owner of United States Patent No. 9,346,662 (the "'662 Patent"), which was issued on May 24, 2016. [*Id.* at ¶ 9] The Preamble describes the '662 Patent as "[a] fuel delivery system for fuel delivery to multiple pieces of equipment at a work site." [#1-1 at 10] The Summary of the '662 Patent states that "[a] fuel delivery system and method is presented for reducing the likelihood that a fuel tank of equipment at a well site during fracturing of a well will run out of fuel." [*Id.* at 7]

Frac Shack alleges that Defendant Atlas Oil Company ("Atlas") has been using modular solutions for refueling during hydraulic fracturing operations in the United States. [#30 at ¶ 12] Frac Shack alleges that one of these solutions, the Atlas Fuel Automation Station ("FAS"), infringes Claims 1-4 and 7-12 of the '662 Patent. [*Id.* at ¶¶ 12-13] Defendant Fuel Automation Station, LLC ("Fuel Automation") leases the Atlas FAS to Atlas. [*Id.* at ¶ 12]

In three prior Orders, this Court construed certain terms of the '662 Patent. [##92, 99, 124] At issue in the instant Motion is Claim One of the '662 Patent. Claim One claims as follows:

> A fuel delivery system for fuel delivery to multiple pieces of equipment at a work site, comprising:
>
> a fuel source comprising one or more manifolds, the one or more manifolds being connectable to a fuel supply;
>
> each manifold of the one or more manifolds having multiple fuel outlets, each fuel outlet of the multiple fuel outlets having a hose connection;
>
> plural hoses, each hose having a first end and a second end and being connected at the first end of the hose to a corresponding one of the multiple fuel outlets having a fuel delivery connection at the second end of the hose for securing the second end of the hose to a corresponding one of the multiple pieces of equipment to which fuel is to be delivered;

2

an electrically operable valve responsive to electronic control signals on each fuel outlet;

a sensor associated with each combination of fuel outlet, hose and fuel delivery connection, each sensor being configured to detect a low fuel condition associated with each of the multiple pieces of equipment to which fuel is to be delivered;

a controller responsive to signals supplied from each sensor through respective communication channels, the controller being configured to provide control signals to open and close the respective electrically operable valves; and

in which the controller is responsive to the detection of the low fuel condition, to display an indication of the low fuel condition or to open at least one of the electrically operable valves for each of the multiple pieces of equipment that is associated with the low fuel condition.

[#1-1 at 10-11]

Of relevance to the instant Motion are two components of the FAS. The first is the manifold and the area surrounding the manifold. Depicted below is a photograph and visual schematic of the area around the FAS manifold, as submitted by Frac Shack:



[#125-1 at 4] Atlas generally does not dispute the schematic, though it does dispute the labeling below the schematic. [*Id.*] Of relevance to the instant dispute, Atlas maintains that label 13, identified by Frac Shack as the "fuel outlet" is not a "fuel outlet" within the meaning of Claim One. [*Id.*]

The second relevant component of the FAS is the interplay between the FAS's sensor and its controller. The FAS sensor transmits signals representative of the fuel level in a tank to the controller as a current that ranges from 4mA to 20mA. [#127-1 at 8] The FAS controller receives the representative signal, translates the value to inches of fuel in the tank, and provides a blue bar as a visual indicator of the sensor reading. [*Id.*] The controller compares the signal from the sensor to a fuel level pre-programmed into the controller. [*Id.* at 9] If the signal from the sensor indicates that the fuel level is below the threshold pre-programmed into the controller, the controller sends a signal to open the appropriate valve to allow fuel to flow to the tank with low fuel. [*Id.*]

## II.    STANDARD OF REVIEW

In construing patent claims, courts are guided by the precedent of the Federal Circuit. *See SunTiger, Inc. v. Sci. Research Funding Grp.*, 189 F.3d 1327, 1333 (Fed. Cir. 1999). A patent infringement claim involves a two-step analysis. First, the Court "must determine as a matter of law the correct scope and meaning of a disputed claim term." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002). Here, the Court construed the disputed claim terms in a series of previous orders. [##92, 99, 124]

At step two, the properly construed patent claims are compared to the accused product. *CCS Fitness, Inc.*, 288 F.3d at 1365. This second step is the infringement

determination, and it is a question of fact.  *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed. Cir. 1997).  "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005).  In its Motion, Frac Shack has only argued for literal infringement.

"Literal infringement requires that each and every claim limitation be present in the accused product." *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed. Cir. 2006).  Any deviation from the claim precludes a finding of literal infringement.  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).  "Thus, a literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998); *see also TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury.").

### III.  ANALYSIS

The parties dispute whether two limitations in Claim One are found in the FAS. First, the parties dispute whether the locations where the FAS hoses connect meet the definition of "fuel outlets" as defined in Claim One.  [#118 at 9-18; #125 at 11-20; 127 at 2-6]  Second, the parties dispute whether the FAS's sensor meets the definition of sensor set forth in Claim One.  [#118 at 18-22; #125 at 20-23; #127 at 8-10]  The Court concludes

that this second dispute, at a minimum, precludes summary judgment in favor of Frac Shack.

As relevant here, Claim One provides: "each sensor being configured to detect a low fuel condition associated with each of the multiple pieces of equipment to which fuel is to be delivered." [#1-1 at 11] Claim One further states that the "controller is responsive to the detection of the low fuel condition, to display an indication of the low fuel condition or to open at least one of the electrically operable valves for each of the multiple pieces of equipment that is associated with the low fuel condition." [*Id.*] During claims construction, the Court construed several of the terms within Claim One. The Court construed "controller" to mean "equipment configured to receive signals indicative of the fuel level in a fuel tank and in response, send control signals to allow fuel to flow to the fuel tank when its level is low and to stop the flow of fuel when its level is high." [#92 at 14] The Court construed "low fuel condition" to mean "a state in which the fuel level is empty or nearly empty." [*Id.* at 12] Finally, the Court construed "detect" to mean "determine the existence of." [*Id.* at 10]

Once "controller," "low fuel condition," and "detect" are defined in the foregoing manner, the first phrase above reads as follows: "each sensor being configured to determine the existence of a state in which the fuel level is empty or nearly empty associated with each of the multiple pieces of equipment to which fuel is to be delivered." The second phrase above reads to define controller as follows: "the equipment configured to receive signals indicative of the fuel level in a fuel tank and in response, send control signals to allow fuel to flow to the fuel tank when its level is low and to stop the flow of fuel when its level is high is responsive to the determin[ation] [of] the existence of a state

6

in which the fuel level is empty or nearly empty, to display an indication of the state in which the fuel level is empty or nearly empty or to open at least one of the electrically operable valves for each of the multiple pieces of equipment that is associated with a state in which the fuel level is empty or nearly empty."

Defendant's expert, Dr. Michael Webber, testified that the determination of a low fuel condition is the determination of a binary condition, *i.e.*, whether the low fuel condition exists or does not exist. [#125 at 21; #125-2 at ¶ 133] Dr. Webber further testified that the FAS sensors do not detect a binary condition, but rather make continuous analog measurements, and communicate those measurements to the controller. [#125 at 21-22; #125-2 at ¶¶ 134, 136] The controller then makes the binary determination as to whether the low fuel condition exists, according to Dr. Webber. [#125-2 at ¶ 136] In contrast, Plaintiff's expert Randy Tolman testified that the FAS sensor, rather than the controller, determines the existence of a low fuel condition. [#127 at 9; #127-2 at 127:6-129:10] In short, there is a genuine issue of material fact as to whether the FAS sensor meets the definition of sensor as set forth in Claim One, and therefore meets the '662 patent's claims.[2]

As a result, the Court cannot conclude that every limitation recited in Claim One is found in the FAS, as is necessary for a finding of literal infringement. Accordingly, the Motion is **DENIED**.

---

[2] At the Final Pretrial Conference on April 15, 2019, the Court suggested to the parties that the issues raised by Plaintiff's Motion may be better suited to resolution in the claims construction context, and offered the opportunity to re-open claims construction briefing. The parties did not accept this offer, however, and the Court is now constrained by the diverging interpretations of the fuel outlet configuration and the nature of the FAS sensor's detection, and must deny summary judgment to Plaintiff.

**IV. CONCLUSION**

For the foregoing reasons, Frac Shack's Partial Motion for Summary Judgment of Infringement [#118] is **DENIED**.

DATED: April 16, 2019                    BY THE COURT:

                                          s/Scott T. Varholak
                                          United States Magistrate Judge